**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| DWAN BROOKS, *individually and* *on behalf of those similarly-situated*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  3:23-cv-365-DJH |
| NEXT LEVEL RELIEF, LLC, BRANDON CAIN, and JUSTIN BOWIE | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

_____

## FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Comes Plaintiff Dwan Brooks, by and through counsel, and, for her First Amended Class Action and Collective Action Complaint against Defendants Next Level Relief, LLC, Brandon Cain, and Justin Bowie, and states as follows:

### I.    Introduction to the Action

1.    The United States Army conducts Cadet Summer Training ("CST") at Fort Knox, Kentucky for approximately ten thousand cadets and soldiers every summer.  Cadets and soldiers must eat.  Therefore, in order to conduct CST, the Army contracts with a private contractor to prepare and serve food to the cadets and soldiers.  Defendant Next Level Relief, LLC ("NLR"), which is owned and controlled by Defendants Cain and Bowie, bid for and won this contract. However, Defendants then deprived the hundreds of employees it hired to fulfill the contract (Plaintiff and Collective and Class Members, as defined below) of wages, including overtime compensation, in violation of the FLSA and Kentucky state law.  Specifically, Defendants promised that employees would be paid weekly for their work from Sunday through Saturday on the Friday, six days after the end of the workweek. However, shortly after beginning operations at

CST, Defendants began simply not paying the employees after work had already been performed, while at the same time lying to the employees about why their wages were not being paid. Defendants paid some employees late, paid some employees only a portion of the amount that they were owed (including not paying for all overtime worked), and paid some employees, including Plaintiff, simply nothing prior to the filing of this action.  Plaintiff seeks for herself and the numerous similarly-situated employees relief in the form of unpaid wages (including minimum wages and unpaid overtime wages), liquidated damages, punitive damages and attorney's fees.

## II.     Jurisdiction and Venue

2.      This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, including 29 U.S.C. § 216(b).

3.      This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under Kentucky state law, as they are related to Plaintiff's claims under the FLSA; they form part of the same case or controversy, and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendants employed Plaintiff and the Class and Collective Members to work at the Fort Knox Army facility (which covers part of Bullitt, Hardin and Meade counties, all of which are within the Louisville Division of this Court).

## III.     Parties

5.      Plaintiff worked for Defendants from June 11, 2023 until July 1, 2023.

6.      Throughout her employment with NLR, Plaintiff worked for Defendants in the State of Kentucky and her work was governed by the FLSA.

7.      Plaintiff has consented to filing the instant lawsuit under the FLSA. (Exhibit 1).

8.     Defendant NLR is a for-profit Wisconsin limited liability company; upon information and belief, Defendant NLR may be served by service of process on its Registered Agent, Justin Wayne Bowie, at 1230 Red Cedar Court, Onalaska, WI 54650.

9.     Defendant Brandon Cain is an individual resident of Wisconsin and is an owner and/or managerial officer of Defendant NLR (or, in the alternative, was an owner and/or managerial officer of Defendant NLR at the time of the initial nonpayment of wages complained of herein). Defendant Cain can be served at 927 Riders Club Road, Onalaska, WI 54650.

10.     Defendant Justin Bowie is an individual resident of Wisconsin and is an owner and/or managerial officer of Defendant NLR (or, in the alternative, was an owner and/or managerial officer of Defendant NLR at the time of the initial nonpayment of wages complained of herein). Defendant Bowie can be served at 1230 Red Cedar Court, Onalaska, WI 54650.

11.     During all times relevant, Defendant NLR was an employer as defined in 29 U.S.C. § 203(d), and an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(s).

12.     Defendants, during April, May, June, and July, 2023, employed hundreds of other non-exempt employees in the Commonwealth of Kentucky and, like Plaintiff, deprived those employees of wages owed under the FLSA and/or Kentucky state law by not paying those employees their wages (including overtime compensation owed for overtime work performed and minimum wages); further, in some instances, Defendants paid wages (including overtime compensation owed for overtime work performed), but paid it substantially after the regular payday when it should have been paid.

## IV.    Facts

**A.    Plaintiff Was Entitled to Overtime Compensation.**

13.    Throughout her employment, Plaintiff worked in a position that was non-exempt under the Fair Labor Standards Act.

14.    Specifically, Plaintiff worked preparing and serving food at a cafeteria at Fort Knox, Kentucky United States Army base.

15.    Defendants agreed to pay Plaintiff a base hourly rate for Plaintiff's work for Defendants.

16.    Defendants themselves categorized Plaintiff as an employee whose work was non-exempt under the FLSA and KWHA.

17.    Defendants categorized Plaintiff's basis of pay as "hourly."

**B.    The FLSA Applies to the Work of Defendants' Employees.**

18.    The work of Plaintiff and the similarly-situated employees of preparing and serving food to soldiers and cadets for Fort Knox's CST program involved interstate commerce, including but not limited to serving soldiers and cadets from (and who would be returning to) numerous states of the United States other than Kentucky, and preparing and serving food from ingredients originating in numerous states of the United States other than Kentucky, and Defendants are therefore subject to the FLSA with respect to Plaintiff and the similarly-situated employees.

19.    In the alternative, Defendants are subject to the FLSA with respect to all employees of Defendants.

20.    At all relevant times, Defendant NLR's annual gross volume of sales made or business done has exceeded $500,000.00. Defendant NLR's contract with the Army to provide food services for the 2023 Fort Knox CST provided for the Army to pay Defendant NLR $4,039,231.38.

21.     Further, during the entire relevant time period, Defendant NLR employed two or more employees who, as part of their work, handled goods and/or materials that were transported in interstate commerce, including preparing and serving food from ingredients originating in numerous states of the United States other than Kentucky.

22.     Accordingly, Defendant NLR meets the definition of an enterprise engaged in commerce or in the production of goods for commerce under 29 U.S.C. § 203.

**C.     Defendant Failed and Refused to Pay Employees for Work Performed.**

23.     In March 2023, Defendant NLR received a contract to provide food services for the 2023 Fort Knox CST.

24.     Defendant NLR had previously served as a subcontractor with respect to the Fort Knox CST.

25.     In order to fulfill its contract to provide food services for the 2023 Fort Knox CST, Defendant NLR hired hundreds of employees.

26.     Defendant NLR failed to pay all of its food service employees (or, in the alternative, a substantial portion of its food service employees) for their work performed during the weeks of May 21-27 (which should have been paid June 2) and May 28-June 3 (which should have been paid June 9, 2023); Defendant NLR paid some of the unpaid amounts owed to these employees on June 16, 2023 (along with pay owed for work performed during the week of June 4-10, 2023).

27.     Plaintiff Dwan Brooks began working for Defendant NLR on June 11, 2023.

28.     Defendant NLR had its employees track their time worked using an application called "Home Base."

29.     Defendant NLR promised its employees that, for each work week (Sunday through Saturday), it would pay them for the hours they worked, as recorded in the "Home Base" application, on the following Friday.

30.     Plaintiff recorded her time worked in Defendant's "Home Base" application.

31.     Screenshots of Defendants' "Home Base" application which reflect the hours Plaintiff worked during the week of June 11, 2023 through June 17, 2023, are attached hereto as Exhibit "3."

32.     Plaintiff worked and was entitled to be paid 40 hours of straight time and 13 hours and 20 minutes of overtime, for a total of 53 hours and 20 minutes during the week of June 11, 2023 through June 17, 2023.

33.     Numerous other employees worked during this workweek and performed overtime work.

34.     Upon information and belief, the total number of employees during this workweek and the subsequent workweeks described in this Complaint was 276.

35.     The regular payday for work performed during the week of June 11, 2023 through June 17, 2023 was Friday, June 23, 2023.

36.     On Friday, June 23, 2023, Defendant NLR did not pay employees any amount.

37.     Instead, Defendants told employees that it had decided to change the pay schedule from a weekly to bi-weekly basis, and that employees would receive checks for the week of June 11, 2023 through June 17, 2023 on June 30, 2023, along with pay for the week of June 18-24, 2023.

38.     Upon information and belief, Defendants first explained this "decision" on June 22, 2023.

39.     Defendants knew that this was a false rationale for the non-payment of wages on June 23, 2023, as soon as it was provided; it was one of many false excuses Defendants gave to Plaintiff and similarly-situated employees for the non-payment (and/or late payment) of wages owed for work performed on or after June 11, 2023.

40.     Screenshots from the "Home Base" application of the hours Plaintiff worked during the week of June 18, 2023 through June 24, 2023, are attached hereto as Exhibit 4.

41.     Plaintiff worked and was entitled to be paid for a total of more than 53 hours during the week of June 17, 2023 through June 24, 2023 (Plaintiff accidently failed to clock out of the Home Base application on June 22, 2023, causing it to record her time as if she had worked continuously until she clocked in the next day at 3:24 a.m.; however, upon information and belief, Plaintiff worked and was entitled to be paid from the time she clocked in at 3:33 a.m. on June 22, 2023 until at least 12:00 p.m. on that day (as on all other days she worked)).

42.     Defendants again did not pay Plaintiff or the similarly-situated employees on June 30, 2023 for either their work during the week of June 11-17, 2023, or their work during the week of June 18-24, 2023.

43.     Plaintiff also performed work during the week of June 25-July 1, 2023 for which she has not been paid.

44.     Plaintiff exchanged texts with Defendant Bowie beginning on June 29, 2023, a copy of which is attached hereto as Exhibit 5.

45.     Copies of the "Preprocessing" payroll summaries sent by Defendant Bowie to Plaintiff by text (smaller versions of which are within Exhibit 5) are attached hereto as Exhibits 6 and 7.

46.     Plaintiff also exchanged texts with Defendant Cain beginning on July 5, 2023, a copy of which is attached hereto as Exhibit 8.

47.     Defendants eventually paid Plaintiff a portion of the wages she earned after the lawsuit was filed on July 18, 2023. To be clear, although Defendants provided Plaintiff with "preprocessing" payroll summaries, they did not pay the amount of earned wages those summaries reflected until she initiated litigation.

48.     Defendants have provided numerous false reasons for not paying employees, including, but limited to, (a) the alleged plan to change from a weekly to bi-weekly pay schedule, (b) an accountant allegedly not properly performing duties, (c) the employee's bank were allegedly holding funds, (d) Defendant NLR's bank did not transmit the funds, and (e) the July 4 holiday prevented payment; however, upon information and belief, the true reasons were that Defendants simply decided to not pay the wages owed and/or Defendants were unable to pay the wages owed because they lacked the funds to pay the employees.

49.     Defendants even created a "Do Not Pay" list, a copy of which is attached hereto as Exhibit 9, and falsely stated that certain employees (including Plaintiff) were not being paid because they had allegedly vandalized their hotel rooms; these false representations were made without any regard for their truth or falsity, and without even checking with the hotel (attached as Exhibit 10 is a document Plaintiff received from the hotel confirming that she had not damaged her room in response to Defendants' false allegations).

50.     Numerous other similarly-situated employees were not paid through the date of filing the initial lawsuit.

51.     Further, the "preprocessing" summaries (Exhibits 6 and 7) and the text thread (Exhibit 5) reflect that Defendants promised to pay, and only paid Plaintiff for only 51 hours for

each of the weeks of June 11-17, 2023 and June 18-25, 2023, when Defendants' own "Home Base" records reflect that Plaintiff worked 53 hours and 20 minutes in the week of June 11-17, 2023, and more than 53 hours in the week of June 18-24, 2023.

52.     All employees who worked overtime, and were not timely paid all or part of their earned overtime, are similarly-situated to Plaintiff in that, whether those employees were ultimately paid in part or in whole or not for their work, they are entitled to all unpaid overtime, minimum wage, and liquidated damages due to Defendants' failure to timely pay wages and overtime on the regular payday when wages were due for the work performed, which was June 23, 2023 for work performed during the week of June 11-17, 2023, June 30, 2023 for work performed during the week of June 18-24, 2023, and July 7, 2023 for work performed during the week of June 25-July 1, 2023.

**D.     Defendants Cain and Bowie Controlled Defendant NLR's Non-Payment of Wages, and Should Be Held Jointly and Severally Liable with Defendant NLR for Defendant NLR's Violations as Joint Employers.**

53.     Defendants Cain and Bowie are owners and managerial members, and/or officers of Defendant NLR, and controlled Defendant NLR's hiring, working, and payroll policies.

54.     Specifically, Defendants Cain and Bowie each repeatedly recognized that wages were owed to Plaintiff and the similarly-situated employees and should be paid.

55.     However, both Defendants Cain and Bowie caused Defendant NLR to not pay the earned and owing wages to Plaintiff and similarly-situated employees at the time the wages were due to be paid.

56.     Accordingly, both Defendants Cain and Bowie are "employers" under the FLSA and are jointly and severally liable with Defendant NLR to Plaintiff and the similarly-situated employees for nonpayment of wages, liquidated damages, and attorney's fees.

V.     **Collective Action Allegations Relating to Defendants' Violation of the FLSA.**

57.    Plaintiff brings Counts I-II of this action pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and other similarly-situated employees defined as:

> All persons employed in Kentucky within the last three (3) years by Next Level Relief, LLC who were paid by the hour and either received less than minimum wage or worked more than forty hours in one or more workweeks and were not paid on their regular payday all overtime compensation owed for such overtime work. (Collective Members)

58.    Plaintiff will file a motion for notice to the Collective Members, and will more fully define the requested scope of the notice and proposed collective in that motion.

59.    For opt-in purposes, Plaintiff proposes use of the blank consent form attached hereto as Exhibit 2.

60.    Plaintiff and the Collective Members are "similarly-situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally-mandated overtime compensation for hours worked over forty (40) during the workweek.

61.    Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common employee compensation, timekeeping and payroll practices, including:

> a.    whether Defendants have failed to time pay Collective Members any amount for their work, in violation of the minimum wage provisions of the FLSA;
>
> b.    whether Defendants have failed to timely pay Collective Members overtime compensation for their overtime work at a rate of one and one-half times the amount of their regular rate of compensation, in violation the overtime compensation provisions of the FLSA;

    c.   whether the conduct of Defendants was willful; and

    d.   whether Plaintiff and the Collective Members are entitled to unpaid wages, liquidated damages and the other relief requested.

62.    Defendants failed to compensate Plaintiff and the similarly-situated employees for all overtime hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

63.    The claims of Plaintiff are similar to those of the Collective Members in that Plaintiff has been subject to the same conduct, and Plaintiff's claims are based on the same legal theory.

64.    The Collective Members are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay and employment practices.

65.    Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff is similarly situated to the Collective Members.

66.    The identities of the Collective Members are known to Defendants and are readily identifiable and may be located through Defendants' business records.

67.    The Collective Members may be readily notified of the instant litigation through direct means, such as U.S. mail, email, text messaging and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and minimum wage violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

VI.    **Class Action Allegations Relating to Defendants' Violation of State Law Pursuant to Federal Rule of Civil Procedure 23.**

68.    Plaintiff brings Counts III-X of this lawsuit individually and as a class action pursuant to Fed. R. Civ. P. 23 under Kentucky law, as set forth below, on behalf of herself and the following class:

> All persons employed by Next Level Relief, LLC in the State of Kentucky within the last five (5) years who were not timely paid full compensation for all work performed. (Class Members)

69.    Plaintiff is a member of the class she seeks to represent.

70.    Defendant NLR failed to pay Plaintiff, and the Class Members wages for work performed, as described herein, in violation of Kentucky state law.

71.    There are in excess of 200 putative Class Members and joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

72.    All Class Members share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all Class Members share common questions of fact and law, including whether, and why, Defendants failed to pay employees wages owed.

73.    Plaintiff's claims are typical of the claims Class Members, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality.  Defendant NLR's failure to pay Plaintiff's wages was not the result of any circumstances specific to Plaintiff.  Rather, it arose from Defendant NLR's common pay policies of not paying wages which was applied generally to the Class Members, despite the fact that Plaintiff and the Class Members were entitled to wages under Kentucky law.

74.    Plaintiff will fairly and adequately represent and protect the Class Members' interests.

75.     Plaintiff has retained competent counsel experienced in representing classes of employees in lawsuits against their employers alleging failure to pay statutorily required overtime compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

76.     By failing to pay Plaintiff and Class Members for all hours worked, Defendant NLR has created the circumstance under which questions of law and fact common to the Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

## COUNT I

### Violation of the FLSA: Failure to Properly Pay Overtime Compensation
### (On Behalf of Plaintiff and the FLSA Collective)

77.     All previous paragraphs are incorporated as though fully set forth herein.

78.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate.  *See* 29 U.S.C. § 207(a)(1).

79.     Each Defendant is subject to the wage requirements of the FLSA because each Defendant is an employer under 29 U.S.C. § 203(d).

80.     At all relevant times, Defendant NLR was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

81.     During all relevant times, Plaintiff and the members of the FLSA Collective were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

82.     During all relevant times, Plaintiff and the Collective Members were not exempt from the overtime requirements of the FLSA.

83.     Plaintiff and the Collective Members each worked more than forty (40) hours in one or more workweeks without full overtime compensation and are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

84.     Defendants knowingly failed to properly compensate Plaintiff and the Collective Members by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

85.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

86.     Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who intentionally fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II

### Violation of the FLSA: Failure to Properly Pay Minimum Wage
### (On Behalf of Plaintiff and the FLSA Collective)

87.     All previous paragraphs are incorporated as though fully set forth herein.

88.     The FLSA requires that covered employees be paid at least the federal minimum wage. *See* 29 U.S.C. § 207(a)(1).

89.     By failing to pay Plaintiff and the Collective Members wages, Defendants knowingly and intentionally failed to pay Plaintiff and Collective Members the required minimum wage, in violation of the FLSA, by failing to pay them their wages for work performed.

90.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

91.     Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who intentionally fail to pay employee minimum wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

### COUNT III

### VIOLATION OF KENTUCKY WOMEN AND MINORS ACT OF 1938
### (On Behalf of Plaintiff and the Rule 23 Class)

92.     All previous paragraphs are incorporated as though fully set forth herein.

93.     The Kentucky Women and Minors' Employment Act of 1938 (Chapter 105, Acts of 1938, K.R.S. 337.360) was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government.

94.     The Kentucky Women and Minors' Act, as it was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government, required the payment to women and minors of a minimum wage for their work, as set by the Commonwealth of Kentucky from time to time.

95.     The Commonwealth of Kentucky continued to adjust the applicable minimum wage under the Kentucky Women and Minors' Employment Act of 1938 from time to time until it adopted the Federal Minimum wage

96.     Accordingly, the Kentucky Women and Minors' Employment Act of 1938, as adopted into the federal enclave (Fort Knox) and retained by the federal government, required Defendant NLR to pay Plaintiff and Class Members at least $7.25 per hour for their work at Fort Knox in 2023.

97. Defendant NLR failed to pay prior to the filing of this action Plaintiff and the Class Members $7.25 per hour for their work, in violation of the Kentucky Women and Minors' Employment Act of 1938.

98. Under the Kentucky Women and Minors' Employment Act of 1938, Plaintiff and the Class Members should be granted a judgment for the unpaid minimum wages, plus costs and reasonable attorney's fees.

### COUNT IV

### VIOLATION OF K.R.S. 337.020 AND K.S. 576a-1
### (On Behalf of Plaintiff and the Rule 23 Class)

99. All previous paragraphs are incorporated as though fully set forth herein.

100. K.R.S. 337.020 (previously enacted as K.S. 576a-1) was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government, and provided as follows:

> Every employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment. Any employee who is absent at the time fixed for payment, or who, for any other reason, is not paid at that time, shall be paid thereafter at any time upon six (6) days' demand. No employer subject to this section shall, by any means, secure exemption from it. Every such employee shall have a right of action against any such employer for the full amount of his wages due on each regular pay day.

101. Defendant NLR fixed the time for payment to Plaintiff and the Class Members as weekly payments.

102. Defendant NLR failed to pay wages earned by Plaintiff and the Class Members, in violation of K.R.S. 337.020 (previously enacted as K.S. 576a-1).

103. Defendant NLR promised to pay Plaintiff and the Class Members by direct deposit

into their bank accounts and, accordingly, the provision of the statute relating to payment upon six days demand is inapplicable (such provision relating to absence or other actions of the employee that prevent payment on the normal payday, and there were no such actions as Defendant NLR alone caused the nonpayment).

104.    In the alternative, to the extent demand was required following Defendant NLR's nonpayment, Plaintiff and the Class Members demanded payment after Defendant NLR failed to pay wages and the wages were not paid within six days after such demand.

105.    Under K.R.S. 337.020 (previously enacted as K.S. 576a-1), Plaintiff and the Class Members should be granted a judgment for their unpaid wages.

## COUNT V

### COMMON LAW CAUSE OF ACTION FOR UNPAID WAGES
### (On Behalf of Plaintiff and the Rule 23 Class)

106.    All previous paragraphs are incorporated as though fully set forth herein.

107.    At the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government, the courts of the Commonwealth of Kentucky recognized a common law cause of action by an employee against an employer for nonpayment of wages.

108.    Defendant NLR failed to pay wages to Plaintiff and the Collective Members after those wages had been earned.

109.    Plaintiff and the Class Members should be granted a judgment against Defendant NLR for the unpaid wages.

## COUNT VI

### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Rule 23 Class)

110.    All previous paragraphs are incorporated as though fully set forth herein.

111.    The common law remedy of breach of contract was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government.

112.    Defendant NLR entered into contracts with Plaintiff and the Class Members expressly promising to pay defined and specified wages for their work.  For instance, attached as Exhibit 11 is an offer letter Defendant NLR made to Plaintiff.

113.    Defendant NLR provided similar offer letters to the Class Members, each of whom accepted their offers as a condition of employment.

114.    The offer letters constituted a binding contract between Defendant NLR and Plaintiff and the Class Members.

115.    Plaintiff's offer letter explicitly stated that "[y]ou will be compensated at $16.20/hour base rate + $4.80 fringe benefits + $21.00/hour, as a non-exempt employee.  Included in your pay will be $59 per diem/day for non-local employees only."

116.    The use of the phrase "as a non-exempt employee" in the contract constituted an agreement by Defendant NLR to pay overtime wages to the employee in accordance with the FLSA, if overtime work was performed.

117.    The Class Members' offer letters were similar, if not identical to Plaintiff's in both form and substance.

118.    Plaintiff and the Class Members performed the work contemplated under their contracts but were not paid as required by the contracts.

119.    Defendant NLR breached its contracts with Plaintiff and the Class Members by not paying the wages required to be paid under the terms of the contracts.

120.    Plaintiff and the Class Members should be granted judgment against Defendant NLR for the unpaid wages for breach of contract.

## COUNT VII

### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Rule 23 Class)

121.    All previous paragraphs are incorporated as though fully set forth herein.

122.    The common law claim of breach of implied contract was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government.

123.    Defendant NLR engaged and requested Plaintiff and the Class Members to perform food services work at the Fort Knox Cadet Summer Training.

124.    Plaintiff and the Class Members rendered valuable services preparing and serving food to thousands of cadets at Fort Knox.

125.    By preparing and serving food to thousands of cadets at Fort Knox, Plaintiff and the Class Members provided valuable services to Defendant NLR, as Defendant NLR had a contract with the government to provide food services at Fort Knox, and it expected to and did receive those services as a result of the contract between the government and Defendant NLR.

126.    The services provided by Plaintiff and the Class Members were accepted by Defendant NLR.

127.    The services provided by Plaintiff and the Class Members were received by Defendant NLR.

128.    The services provided by Plaintiff and the Class Members were rendered with the knowledge and consent of Defendant NLR.

129.    Plaintiff and the Class Members actually and reasonably expected that they would be paid by Defendant NLR for their work.

130.    Defendant NLR was aware that Plaintiff and the Class Members actually and reasonably expected that they would be paid by Defendant NLR for their work.

131.     In the alternative, Defendant NLR reasonably should have expected that Plaintiff and the Class Members actually and reasonably expected that they would be paid by Defendant NLR for their work.

132.     Defendant NLR did not pay Plaintiff and the Class Members for their work.

133.     Plaintiff and the Class Members should be granted a judgment against Defendant NLR for their unpaid wages.

## COUNT VIII

**QUANTUM MERUIT**
**(On Behalf of Plaintiff and the Rule 23 Class)**

134.     All previous paragraphs are incorporated as though fully set forth herein.

135.     The common law claim of quantum meruit was in effect at the time of the cession of Fort Knox by the Commonwealth of Kentucky to the United States Government.

136.     Defendant NLR engaged Plaintiff and the Class Members to perform food services work at the Fort Knox Cadet Summer Training.

137.     Defendant NLR requested Plaintiff and the Class Members perform food services work at the Fort Knox Cadet Summer Training.

138.     Plaintiff and the Class Members rendered valuable services for Defendant NLR by preparing and serving food to thousands of cadets at Fort Knox, in furtherance of Defendant NLR's contract with the government.

139.     The services provided by Plaintiff and the Class Members were accepted and received by Defendant NLR.

140.     The services provided by Plaintiff and the Class Members were rendered with the knowledge and consent of Defendant NLR.

141.    Plaintiff and the Class Members actually and reasonably expected that they would be paid by Defendant NLR for their work.

142.    Defendant NLR was aware that Plaintiff and the Class Members actually and reasonably expected that they would be paid by Defendant NLR for their work.

143.    In the alternative, Defendant NLR reasonably should have expected that Plaintiff and the Class Members would expect to be paid by Defendant NLR for their work.

144.    Defendant NLR did not pay Plaintiff and the Class Members for their work.

145.    Plaintiff and the similarly-situated employees should be granted a judgment against Defendant NLR for their unpaid wages under the doctrine of Quantum Meruit.

## COUNT IX

### FRAUD
### (On Behalf of Plaintiff and the Rule 23 Class)

146.    All previous paragraphs are incorporated as though fully set forth herein.

147.    Defendants represented to Plaintiff and the Class Members that Defendant NLR was ready, willing and able to pay Plaintiffs for their work.

148.    Defendants knew that Plaintiff and the Class Members would rely upon Defendants' representations regarding payment of wages for their work, and, based on that reliance, would perform work for Defendant NLR in the expectation that they would receive payment for that work until such time as Defendants told Plaintiff and the Class Members that they were terminated or laid off or otherwise clearly expressed that they would not be paid for their work.

149.    Plaintiff and the Class Members relied upon Defendants' representations, and, based on that reliance, performed work in the expectation that they would receive payment for that work.

150. Defendants knew before Plaintiff and the Class Members performed the work that Defendant NLR would not pay them for some or all of the work.

151. Defendants concealed from Plaintiff and the Class Members their intent to retain the funds it received from the government and refuse to pay wages.

152. After Defendants' failed to pay wages in a timely manner, Defendants provided false explanations of the reason for the nonpayment.

153. Defendants knew that the explanations were false, and provided them in order to cause Plaintiff and the Class Members to preform further work.

154. Plaintiff and the Class Members performed further work after Defendants' false explanations for its non-payments, in reliance on Defendants' promises that employees would be paid for their work.

155. Defendants did not pay Plaintiff and the Class Members for their work.

156. Defendants' acts of encouraging Plaintiff and the Class Members to perform work with the expectation of pay, while knowing that Defendant NLR would not pay them their expected wages as promised, constituted fraud.

157. Defendants' acts of fraud relating to Plaintiff and the Class Members were intentional and malicious, and not the result of accident, unintentional poor business management, or other factors beyond Defendants' control.

158. The Court should enter a judgment against Defendants in the amount of the wages Plaintiff and the Class Members earned but which were not paid.

159. The Court should enter a judgment against Defendants for punitive damages in an amount sufficient to deter Defendants and other employers and individuals who might consider taking similar actions in the future from defrauding employees of wages through false promises,

representations, and explanations of nonpayment.

## COUNT X

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Rule 23 Class)

160.    All previous paragraphs are incorporated as though fully set forth herein.

161.    In the event that none of the above stated Kenntucky state law remedies apply, Plaintiff and the Class Members seek recovery under the doctrine of unjust enrichment, which existed before the date of cessation.

162.    Defendants received funds from the federal government under a contract for arranging for food services at Fort Knox.

163.    In the alternative, Defendant NLR received such funds, and Defendants Cain and Bowie directed the distribution of such funds, including, upon information and belief, directing the distribution of some of such funds to Defendants Cain and Bowie, personally, and/or for their personal benefit.

164.    Plaintiff and the Class Members performed the actual food service work that resulted in the payment to Defendants of funds from the federal government.

165.    All Defendants were enriched at the expense of the working time, effort, and time away from family and home of Plaintiff and the Class Members that resulted in Defendants receipt of benefit (funds from the federal government).

166.    It would be unjust for Defendants to retain the benefit of the funds Defendants received as a result of the work of Plaintiff and the Class Members.

167.    The Court should enter a judgment against Defendants in the amount of the benefit Defendants received, including the amount of all payments from the federal government as a result of food service Plaintiff and the Class Members provided at Fort Knox.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all other similarly-situated:

a.  The issuance of process, and the bringing of Defendants before the Court;

b.  An order directing prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all putative FLSA Collective Members;

c.  An order after Plaintiff is provided with an opportunity for discovery certifying under Rule 23 comprised of the Class Members as defined above, and thereafter a judgment granting the class all relief available under applicable state law, including unpaid wages, liquidated damages, compensatory damages, punitive damages, disgorgement of unjust enrichment, and attorney's fees and other litigation expenses, to the class

d.  A jury trial on all issues of fact;

e.  A judgment against Defendants in favor of Plaintiff, and the FLSA Collective Members for unpaid wages, including overtime compensation and minimum wage compensation, to the fullest extent permitted under the law;

f.  A judgment against Defendants in favor of Plaintiff, and the FLSA Collective Members for liquidated damages to the fullest extent permitted under the law;

g.  A judgment against Defendants in favor of Plaintiff, and the FLSA Collective Members and/or the Rule 23 Class Members for litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h.  Such other and further relief to which Plaintiff, the FLSA Collective Members and/or the Rule 23 Class Members are entitled or which this Court otherwise deems just and proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

/s/ Philip Bohrer
Philip Bohrer
Scott E. Brady
*phil@bohrerbrady.com*
*scott@bohrerbrady.com*
BOHRER BRADY, LLC
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana   70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000
*Counsel for Plaintiff*